UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VIRGINIA MILLER BURNETT,               )   Case No. ED CV 13-2223-SP
               Plaintiff,        )
                             )
      v.                             )   MEMORANDUM OPINION AND
                             )   ORDER
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social Security )
Administration,                        )
             Defendant.         )
_____)

## I.

## INTRODUCTION

On December 4, 2013, plaintiff Virginia Miller Burnett filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether substantial evidence supports the residual functional capacity ("RFC") assessment by the administrative law judge ("ALJ"); and (2) whether the ALJ properly considered plaintiff's credibility. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 3-11; Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-9.

Having carefully studied the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, substantial evidence does not support the ALJ's RFC assessment and the ALJ failed to provide clear and convincing reasons for discounting plaintiff's credibility. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-three years old on her alleged onset of disability date, has a GED. AR at 35, 72-73. Plaintiff has past relevant work as a home attendant. *Id.* at 61.

On February 22, 2011, plaintiff protectively filed an application for a period of disability and DIB due to breast cancer, a blood disorder, blurred vision in the left eye, diabetes, high blood pressure, poor circulation in the right leg, an inability to lift with the left arm, and anxiety. *Id.* at 72. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 85-88, 96-100, 102.

On June 28, 2012, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 26-71. The ALJ also heard testimony from a vocational expert. *Id.* at 60-66. On August 30, 2012, the ALJ denied plaintiff's

1   claim for benefits.  *Id.* at 12-20.  Plaintiff filed a timely request for review of the
2   decision, which the Appeals Council denied.  *Id.* at 1-3, 7.

3       Applying the well-known five-step sequential evaluation process, the ALJ
4   found, at step one, that plaintiff had not engaged in substantial gainful activity
5   from October 31, 2002, the alleged onset of disability, through June 30, 2008, the
6   date last insured.  *Id.* at 14.

7       At step two, the ALJ found that plaintiff suffered from the severe
8   impairments of diabetes and left distal fibula fracture.  *Id.*

9       At step three, the ALJ found that plaintiff's impairments, whether
10  individually or in combination, did not meet or medically equal one of the listed
11  impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the
12  "Listings").  *Id.* at 16.

13      The ALJ then assessed plaintiff's RFC,[1] and determined that she had the
14  RFC to perform light work, with the limitations that plaintiff could:  lift/carry
15  twenty pounds occasionally and ten pounds frequently; stand/walk for six hours in
16  an eight-hour work day with regular breaks; sit for six hours in an eight-hour work
17  day with regular breaks; and occasionally climb ramps and stairs.  *Id.*  The ALJ
18  precluded plaintiff from climbing ladders, ropes, or scaffolds.  *Id.*

19      The ALJ found, at step four, that plaintiff was unable to perform her past
20  relevant work as a home attendant.  *Id.* at 18.

21      At step five, the ALJ found that there were jobs that existed in significant
22  numbers in the national economy that plaintiff could have performed, including

23

24  ─────────────────
        [1]   Residual functional capacity is what a claimant can do despite existing
25  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,
26  1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
    evaluation, the ALJ must proceed to an intermediate step in which the ALJ
27  assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
28  F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  cleaner, photo copy machine operator, and Mexican food maker. *Id.* at 19.

2  Consequently, the ALJ concluded that, for the relevant period, plaintiff did not

3  suffer from a disability as defined by the Social Security Act. *Id.* at 20.

4       The ALJ's decision stands as the final decision of the Commissioner.

5  ### III.

6  ### STANDARD OF REVIEW

7       This court is empowered to review decisions by the Commissioner to deny

8  benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

9  Administration must be upheld if they are free of legal error and supported by

10  substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

11  (as amended). But if the court determines that the ALJ's findings are based on

12  legal error or are not supported by substantial evidence in the record, the court

13  may reject the findings and set aside the decision to deny benefits. *Aukland v.*

14  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

15  1144, 1147 (9th Cir. 2001).

16       "Substantial evidence is more than a mere scintilla, but less than a

17  preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

18  "relevant evidence which a reasonable person might accept as adequate to support

19  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

20  F.3d at 459. To determine whether substantial evidence supports the ALJ's

21  finding, the reviewing court must review the administrative record as a whole,

22  "weighing both the evidence that supports and the evidence that detracts from the

23  ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

24  affirmed simply by isolating a specific quantum of supporting evidence.'"

25  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

26  Cir. 1998)). If the evidence can reasonably support either affirming or reversing

27  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

28

4

1  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
2  1992)).

3                                          **IV.**

4                                    **DISCUSSION**

5  **A.     The ALJ's RFC Determination Was Not Supported by Substantial**
6          **Evidence**

7          Plaintiff argues that the ALJ's RFC determination was not supported by
8  substantial evidence.  P. Mem. at 3-8.  Specifically, plaintiff contends that the ALJ
9  erred at step two when, contrary to the medical evidence, he found that plaintiff's
10 anemia and migraines were not severe.  Plaintiff also contends the ALJ improperly
11 found that her diabetes were under control.  Plaintiff maintains that the medical
12 evidence of each of these impairments supports additional limitations.

13         Defendant argues that any error the ALJ may have committed at step two is
14 harmless because the ALJ found plaintiff suffered from other severe impairments.
15 *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ at step
16 two was harmless because the step was resolved in plaintiff's favor).  But plaintiff
17 is really contending that the ALJ's step two error led to an error in assessing
18 plaintiff's RFC – that the ALJ's failure to properly evaluate her anemia and
19 migraines resulted in a less restrictive RFC than warranted.  If so, any step two
20 error was not harmless.

21         **1.     Step Two**

22         At step two, the Commissioner considers the severity of the claimant's
23 impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  "[T]he step-two inquiry is a de
24 minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80
25 F.3d 1273, 1290 (9th Cir. 1996).

26         Here, the ALJ determined that plaintiff had the severe impairments of
27 diabetes and left distal fibula fracture, but specifically found that plaintiff's

28

                                          5

1   anemia and migraines were not severe.  AR at 14-15.  The ALJ concluded that

2   plaintiff's anemia was not severe because although she required a transfusion in

3   March 2002, she did not have recurrent problems with anemia.  *Id*. at 14.  As for

4   plaintiff's migraines, the ALJ noted that her head CT scan revealed unremarkable

5   findings and her doctor opined that her headaches were rebound analgesic

6   headaches that would reduce after stopping her medications.  *Id.* at 14-15.  As

7   such, the ALJ concluded that plaintiff's anemia and migraines would have no

8   more than a minimal effect on her ability to work and were not severe.  *Id.*

9                       **a.    Anemia**

10        Plaintiff contends that the medical evidence shows that she suffered from

11   anemia from at least March 2002 through March 2005, that she required two blood

12   transfusions as a result of her condition, and the anemia caused fatigue.  P. Mem.

13   at 3-4.

14        The medical records show that in March 2002, plaintiff entered the

15   emergency room complaining of an "altered level of consciousness."  AR at 327-

16   28.  Blood tests revealed that plaintiff suffered from profound anemia and required

17   a blood transfusion.  *Id.* at 351.  Plaintiff's blood test results throughout 2002

18   indicate that plaintiff continued to suffer from anemia but plaintiff did not

19   complain of any anemia-related symptoms such as fatigue.  *See, e.g.*, *id*. at 353-63.

20   In January 2003, plaintiff was admitted to the hospital after suffering from bloody

21   diarrhea for three to four days.  *See id.* at 368-72.  The hospital conducted a blood

22   test and noted that plaintiff had low hemoglobin.  *Id.* at 371.  Dr. Dennis Nagel

23   opined that the bloody diarrhea may be a contributing factor to plaintiff's anemia

24   and ordered a blood transfusion.  *Id.* at 371-72.  Plaintiff's hemoglobin and

25   hematocrit levels were still slightly low in June 2003, but by July 2004, her blood

26   tests indicated normal hemoglobin and hematocrit levels.  *Id.* at 299.  Subsequent

27   blood tests in November 2004, March 2005, and February 2007 also reflected

28

1  normal hemoglobin and hematocrit levels. *Id.* at 258, 279, 293. Plaintiff argues

2  that she was still anemic on March 23, 2005, but the record shows that her

3  hematocrit levels were normal and her hemoglobin levels were only a tenth of a

4  gram/dl below normal. *See id.* at 281. And two days later, both plaintiff's

5  hemoglobin and hematocrit levels were in the normal range. *See id.* at 279.

6        The record here plainly reflects that plaintiff suffered from anemia from at

7  least March 2002 through June 2003. But whether plaintiff's symptoms had more

8  than a minimal effect on her ability to work is not as clear. *See Webb v. Barnhart*,

9  433 F.3d 683, 686 (9th Cir. 2005) ("An impairment is not severe if it is merely a

10  slightly abnormality (or combination of abnormalities) that has no more than a

11  minimal effect on the ability to do basic work activities.") (internal citation and

12  quotations omitted). In March 2002, plaintiff was suffering from lethargy related

13  to anemia and received a blood transfusion. AR at 327-28, 351. But although the

14  blood test results from March 2002 through June 2003 indicated plaintiff suffered

15  from anemia, none of plaintiff's post-March 2002 medical records document her

16  complaining of fatigue. *See, e.g., id.* at 353-63. Indeed, plaintiff sought treatment

17  on numerous occasions for other ailments but did not complain of symptoms

18  relating to her anemia. *See id.* And subsequent complaints of fatigue appeared to

19  be related to her diabetes. *See, e.g.*, *id*. at 225-26.

20        In sum, there is evidence cutting both ways with respect to plaintiff's

21  anemia, including evidence that supports the ALJ's determination that plaintiff's

22  anemia had only a minimal effect on her ability to work. As such, the court will

23  not substitute its judgment for that of the ALJ.

24                    **b.   Migraines**

25        Plaintiff contends that the medical evidence does not support the ALJ's

26  finding that her migraines were caused by her medication usage, and that the

27  ALJ's reliance on an CT scan was improper. P. Mem. at 4-6.

28

7

1    The records show that plaintiff had continuously complained of migraine
2 headaches throughout the alleged period of disability.  *See, e.g.,* AR at 228-29,
3 357, 365.  She treated the headaches with Stadol, a narcotic, and Fioricet, a
4 barbituate.  *See id.* at 352.  In addition to Stadol and Fioricet, plaintiff was taking
5 numerous other medications, including three benzodiazepines.  *See id.* at 366-67.
6 In March 2002, Dr. David M. Quam discussed with plaintiff the inadvisability of
7 using narcotics treat chronic headaches.  *See id.* at 351.  In November 2002, Dr.
8 Francisco Torres, a neurologist examined plaintiff after she complained of having
9 migraines at least twice a week.  *See id.* at 366.  Dr. Torres reviewed a CT scan
10 performed earlier in the year and noted that it was negative.  *See id.* at 367.  Dr.
11 Torres explained to plaintiff that he believed she had rebound analgesic headaches
12 and that by stopping her medications her headache problem would improve.  *See*
13 *id.*  He further explained that he did not guarantee she would be pain free, only
14 that her headaches would probably decrease in frequency and intensity.  *See id.*
15 Plaintiff's treating physician continued to prescribe plaintiff Stadol during the
16 insured period.  *See, e.g., id*. at 229, 231, 377.

17    Plaintiff argues that the lack of findings in the CT scan is insignificant.  The
18 court agrees.  Although a CT scan may reveal certain causes of headaches, it is not
19 used to diagnose migraine headaches.

20    As for Dr. Torres's opinion that plaintiff's headaches would decrease should
21 plaintiff stop her medications, that opinion does not support the ALJ's finding that
22 plaintiff's migraines were not severe.  Although plaintiff did not comply with Dr.
23 Quam's and Dr. Torres's recommended treatment plan, even assuming plaintiff
24 had ceased the use of medications such as Stadol, she likely would have continued
25 to experience migraines.  Dr. Torres opined that plaintiff's headaches would
26 probably decrease in frequency and intensity, but would not cease completely.  *Id.*
27 at 367.  The ALJ appears to have interpreted Dr. Torres's opinion as meaning that
28

1   plaintiff's migraines would be effectively controlled, but the evidence does not

2   support that conclusion.  As such, the ALJ improperly concluded that plaintiff's

3   migraines were not a severe impairment.

4          Accordingly, the ALJ erred in part at step two.  His finding that plaintiff's

5   anemia was not a severe impairment was supported by substantial evidence, but

6   his finding that plaintiff's migraines were not severe was not similarly supported.

7          Plaintiff testified that she cannot function when she has migraines, that she

8   had them two to three times a month, and that they could last a week or more.  *Id.*

9   at 43, 56.  Having found her migraines not to be a severe impairment, the ALJ

10  appears to have also found plaintiff's migraines had no effect on her RFC.  *See*

11  Social Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must

12  consider limitations and restrictions imposed by all of an individual's

13  impairments, even those that are not 'severe.'" ).[2]  Although the ALJ stated he

14  took plaintiff's nonsevere impairments into account, in assessing plaintiff's RFC

15  he neither discussed plaintiff's migraines nor factored missed work time into

16  plaintiff's RFC.  AR at 16-18.  As such, plaintiff's RFC was inconsistent with the

17  substantial evidence of plaintiff's severe migraine impairment.

18         **2.     Diabetes**

19         Plaintiff argues that in reaching her RFC determination, the ALJ also failed

20  to consider the effect her diabetes had on her, in particular the fatigue, because the

21  ALJ incorrectly found that her diabetes was controlled.  P. Mem. 6-7.

22

23  ───────────────

24         [2]  "The Commissioner issues Social Security Rulings to clarify the Act's
    implementing regulations and the agency's policies.  SSRs are binding on all
25  components of the SSA.  SSRs do not have the force of law.  However, because
    they represent the Commissioner's interpretation of the agency's regulations, we
26  give them some deference.  We will not defer to SSRs if they are inconsistent with
    the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th
27  Cir. 2001) (internal citations omitted).

28

1   In making his RFC determination, the ALJ considered the limitations
2   caused by plaintiff's diabetes. *See* AR at 17-18. The ALJ found that there was no
3   evidence that plaintiff suffered from any end organ damage, neuropathy, acidosis,
4   or diabetes-related visual impairment. *Id.* at 17. The ALJ noted that plaintiff
5   reported feeling fatigued due to her condition, but plaintiff's diabetes was under
6   control after a few episodes of uncontrolled glucose levels in early 2005. *See id.*
7   at 17-18. In other words, the ALJ found fatigue was not a limitation because
8   plaintiff's diabetes was controlled.

9       Diagnosed with diabetes in late 2004, the record reflects that from 2005-
10  2007 plaintiff had elevated glucose and A1C percent levels, indicating that her
11  diabetes was poorly controlled.[3] *See id.* at 383. For example, in March 2005,
12  plaintiff had a fasting glucose level of 600 and was diagnosed with diabetic
13  ketoacidosis. *Id.* at 385. In November 2006, plaintiff's blood glucose level was
14  324. *See id.* at 264. And in February 2007, plaintiff had a fasting glucose level of
15  246. *See id.* at 258. These numbers do not support the ALJ's finding that
16  plaintiff's diabetes was under control after a "few episodes of uncontrolled
17  glucose levels" "within the first few months of being diagnosed." *Id.* at 18. As
18  such, the ALJ's conclusion that plaintiff's diabetes was under control and thus she
19  was not fatigued is not supported by substantial evidence.

20      Accordingly, the ALJ's RFC determination is not supported by substantial
21  evidence. The ALJ failed to properly consider the evidence of plaintiff's
22  migraines and the effects of her diabetes.

23  **B.   The ALJ Failed to Properly Consider Plaintiff's Credibility**

24      Plaintiff argues that the ALJ discounted her credibility without providing
25  clear and convincing reasons supported by substantial evidence. P. Mem. at 8-11.

26

---

27      [3]   A fasting glucose level of 126 or above or a A1C percentage of 6.5 and
28  above indicate diabetes. *See* http://diabetes.niddk.nih.gov/dm/pubs/diagnosis/#3.

1    Specifically, the ALJ only cited one reason for finding plaintiff less credible,

2    which was that her limitations were not supported by objective medical evidence.

3    *Id*. at 10.  Plaintiff contends that this reason, by itself, is insufficient.  *Id*. at 10-11.

4         The ALJ must make specific credibility findings, supported by the record.

5    SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the

6    ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

7    36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced

8    objective medical evidence of an underlying impairment "'which could reasonably

9    be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting

10   *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there

11   is no evidence of malingering, an "ALJ can reject the claimant's testimony about

12   the severity of her symptoms only by offering specific, clear and convincing

13   reasons for doing so."  *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d

14   1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in weighing a

15   claimant's credibility, including:  (1) ordinary techniques of credibility evaluation

16   such as a claimant's reputation for lying; (2) the failure to seek treatment or follow

17   a prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti*

18   *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

19        At the first step, the ALJ found that plaintiff's medically determinable

20   impairments could reasonably be expected to cause the symptoms alleged.  AR at

21   17.  At the second step, because the ALJ did not find any evidence of malingering,

22   the ALJ was required to provide clear and convincing reasons for discounting

23   plaintiff's credibility.   Here, the ALJ discounted plaintiff's credibility because

24   there was no objective evidence from the alleged period of disability to support

25   plaintiff's purported limitations.  *Id.*

26        The lack of objective medical evidence to support allegations of limitations

27   is a factor that may be considered when evaluating credibility, but it is insufficient

28

1   by itself.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of

2   corroborative objective medicine may be one factor in evaluating credibility);

3   *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective

4   complaints based solely on a lack of objective medical evidence to fully

5   corroborate the alleged severity of pain").  Here, the ALJ only cited lack of

6   objective medical evidence and as such his reasoning is insufficient.

7        Moreover, it is unclear how the objective medical evidence did not support

8   plaintiff's alleged limitations.  The record contains instances of plaintiff

9   complaining about fatigue related to her diabetes, as well as a diagnosis of

10  diabetes ketoacidosis.  *See* AR at 224-26, 385.  Similarly, the record contains

11  multiple complaints about her migraine headaches and throbbing pain.[4]  *See, e.g.,*

12  *id.* at 229, 363.

13       Accordingly, the ALJ failed to cite clear and convincing reasons supported

14  by substantial evidence to find plaintiff less credible.

15                                  **V.**

16                     **REMAND IS APPROPRIATE**

17       The decision whether to remand for further proceedings or reverse and

18  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

19  888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this

20  discretion to direct an immediate award of benefits where: "(1) the record has been

21  fully developed and further administrative proceedings would serve no useful

22  purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

23  evidence, whether claimant testimony or medical opinions; and (3) if the

24  improperly discredited evidence were credited as true, the ALJ would be required

25  to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020

26  _____

27       [4]   There was evidence of non-compliance with a treatment plan with respect to

28  both the migraine headaches and diabetes, but the ALJ cited neither as a reason for
    discounting plaintiff's credibility.

1    (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with
2    instructions to calculate and award benefits).  But where there are outstanding
3    issues that must be resolved before a determination can be made, or it is not clear
4    from the record that the ALJ would be required to find a plaintiff disabled if all the
5    evidence were properly evaluated, remand for further proceedings is appropriate.
6    *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,
7    211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for
8    further proceedings when, even though all conditions of the credit-as-true rule are
9    satisfied, an evaluation of the record as a whole creates serious doubt that a
10   claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

11          Here, the ALJ failed to properly evaluate the medical evidence regarding
12   plaintiff's migraine headaches at step two, failed consider plaintiff's limitations
13   arising from her migraines and diabetes in his RFC determination, and failed to
14   provide clear and convincing reasons for finding plaintiff less credible.  Remand is
15   required to fully develop the record in these respects, and with respect to the effect
16   a revised RFC may have on plaintiff's ability to work.  In particular, although the
17   vocational expert here opined that there was work for a person with the RFC
18   assessed by the ALJ, and that a person with the limitations posed by plaintiff's
19   attorney would not be able to work (*see* AR at 62-66), whether plaintiff's RFC
20   would conform with those limitations if the evidence of plaintiff's migraines and
21   diabetes fatigue were properly considered is unclear.

22          On remand, the ALJ shall reconsider the evidence concerning plaintiff's
23   migraines and diabetes and incorporate any limitations into his RFC
24   determination.  The ALJ shall also reconsider plaintiff's credibility in light of all
25   the evidence in the record.  The ALJ shall assess plaintiff's RFC and proceed
26   through steps four and five to determine what work, if any, plaintiff is capable of
27   performing.

28

1

## VI.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment shall be entered
REVERSING the decision of the Commissioner denying benefits, and
REMANDING the matter to the Commissioner for further administrative action
consistent with this decision.

DATED: December 29, 2014

SHERI PYM
United States Magistrate Judge

14